### IN THE FEDERAL DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ASSIA BOUNDAOUI, | |
| Plaintiff, | |
| v. | Case No.:      21-cv-00421 |
| CONSTELLATION BRANDS, INC. | |
| Defendants. | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff ASSIA BOUNDAOUI ("Plaintiff"), by and through undersigned Counsel, complaining of Defendant CONSTELLATION BRANDS, INC. ("Defendant") for conspiring to interfere with Plaintiff's rights to equal protection and privileges under the law on the basis of her race, ethnicity, gender, and political positions in violation of 42 U.S.C. § 1985(3), along with a supplemental state claim for common law battery. In support of her claims, Plaintiff states as follows:

### JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. This action is brought in part pursuant to 42 U.S.C. § 1985(3) for conspiracy to violate Plaintiff's rights to equal protection and privileges under the law. Plaintiff's supplemental state law claim arose out of the same events from which her § 1985 claim arises.

**VENUE**

2.  Venue is proper under 28 U.S.C. § 1391 *et seq.* Defendant resides in this judicial district, as it conducts business and is subject to personal jurisdiction in this judicial district.

**THE PARTIES**

3.  Plaintiff ASSIA BOUNDAOUI is a journalist and filmmaker. She is female and is of North African and Arab descent.

4.  Defendant CONSTELLATION BRANDS owns and operates a bar and distillery named High West Distillery, which sponsored and hosted events for the Sundance Film Festival, including the event attended by Plaintiff giving rise to the claims raised in this Complaint.

**FACTUAL ALLEGATIONS**

5.  Plaintiff is female and is of North African and Arab descent.

6.  The Sundance Film Festival ("SFF") is the largest independent film festival conducted annually in the United States. SFF's focus is to bring wider attention to independent films and independent filmmakers, and is considered one of the most prestigious film festivals in the world.

7.  Plaintiff attended the 2020 SFF in Park City, Utah as an invited guest of the festival. This was her fourth time attending the festival.

8.  Plaintiff was invited to the 2020 SFF to attend and participate in a panel discussion as a guest of the MacArthur Foundation.

9.  On January 27, 2020, Plaintiff attended an invitation-only event sponsored by the Ford Foundation on civil society, activism and representation of minority communities in the arts. Plaintiff was invited to this event as a former grantee of the Ford Foundation's programs to support films focusing on social justice issues. The event was held at Defendant's High West Distillery.

10. After the event, Plaintiff and a group of other filmmakers were gathered around at an outdoor firepit smoking cigarettes and discussing filmmaking, racial inequality and immigration in the United States, among other things. Plaintiff and her colleagues were also discussing collaborations on artistic projects related to the topic. Three (3) out of the four (4) members of this group were women of color: one African American, one Native American, and Plaintiff. The fourth person in the group was a White male.

11. At a certain point during their conversation, a member of Defendant's security staff (White male) approached Plaintiff's group, rudely told them to leave, and told them they could not smoke on the premises. The employee has been identified as Jared Downs.

12. Upon information and belief, Plaintiff and her group were visible to Downs.

13. Upon information and belief, Downs overheard the conversation of Plaintiff and her group.

14. There were no signs or placards in the area indicating smoking outdoors was prohibited.

15. Plaintiff and her colleagues had seen others smoking there before. There were also cigarette butts on the ground and in the firepit left behind by others that had smoked there before.

16. Plaintiff and her colleagues immediately complied with Downs' request that they leave. While they were getting up to leave, one of Plaintiff's colleagues made a statement that the group would finish smoking their cigarettes off the property and then return back to the firepit. Downs told them they could not return to the property at all.

17. Because Plaintiff saw no signs or placards indicating smoking outdoors was prohibited, and she had seen others smoke there before, she asked Downs about the no-smoking rule. Downs told the group that, "you are breaking the law" and again rudely told the group to leave, even though they were already leaving.

18. As they were leaving, Plaintiff turned her back toward Downs and made a comment to one of her colleagues that the manner in which Downs' was treating them was rude. At that time, Downs put his hands on Plaintiff's mid-back and roughly shoved her, causing her to stumble forward.

19. Plaintiff stopped herself from falling, turned to face Downs, pointed to the part of her back where she was pushed and asked him why he put his hands on her. Plaintiff told Downs not to touch her.

20. Downs yelled for a Park City police officer he saw managing traffic down the street. Downs yelled to the officer, "These people are refusing to leave the property." The police officer was later identified as David Hanna, an adult probation and parole officer working at a traffic post during the film festival.

21. One of Plaintiff's colleagues told Officer Hanna that Downs had attacked the Plaintiff. Officer Hanna asked the group to cross the street and they complied.

22. Officer Hanna stayed on the same side of the street as Downs.

23. Officer Hanna and Downs spoke for fifteen (15) to twenty (20) minutes by themselves, after which Officer Hanna walked back to his traffic intersection. Hanna did not return to Plaintiff and her witnesses, did not ask Plaintiff or the witnesses any questions, nor did he ask them whether she wanted to file a police report.

24. Later the same day, Plaintiff and her group reported the incident at the Park City police department and Plaintiff filed a criminal complaint.

25. Upon information and belief, the Park City police officers investigating Plaintiff's claim were familiar with Defendant's facility and conspired with Defendant and Downs by, among other

things, tipping them off to the complaint before Downs could be located, and helping Defendant build a narrative that would bury Plaintiff's criminal complaint.

26. Despite three (3) witnesses attesting to the fact that Downs shoved Plaintiff while her back was turned and while she and the others were already leaving the premises, Park City Police declined to charge Downs in the matter.

27. Plaintiff and her witnesses informed the organizers of SFF about the incident. SFF organizers sought to resolve the matter between Plaintiff and Defendant (its sponsor) by requesting an apology on her behalf, among other measures requested so that similar incidents would not occur in the future. Defendant, through its Vice-President of Human Resources, refused to acknowledge the validity of Plaintiff's assault claim. Defendant has since pulled its sponsorship from SFF.

28. Defendant disparaged Plaintiff and her colleagues to the organizers of SFF.

29. Part of the reason Plaintiff attended SFF was so that she could network and pitch projects to important funders and industry stakeholders. Because of the incident at and by Defendant, Plaintiff missed important meetings and networking opportunities that resulted in lost potential work and funding.

## COUNT I
### § 1985 Claim

30. Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

31. Plaintiff is a member of a protected class. She is a female of North African, Arab descent and she and her colleagues were discussing the politics of racism, social justice and artistic expression at the time of the occurrence. Plaintiff had also just attended a panel discussion at Defendant's facility discussing a similar topic.

32. Defendant conspired with Park City police to have Plaintiff's criminal complaint against its employee, Downs, buried. In so doing, Defendant engaged in a conspiracy to deprive Plaintiff of the equal protection and privileges of the law. Defendant's actions were willful and wonton or conducted with reckless disregard for the injury it would incur on Plaintiff.

33. The conduct of Defendant and its employee Downs was motived by Plaintiff's race, ethnicity, political opinions and social justice activism.

34. Defendant's actions violated 42 U.S.C. § 1985(3) and caused Plaintiff to lose work and funding opportunities, as well as causing her physical and emotional harm.

## COUNT II
## State Supplemental Law Claim: Common Law Battery

35. Plaintiff reasserts and realleges all previously pled paragraphs as if fully stated herein.

36. At all times relevant, Defendant employed Downs and Downs was acting in his capacity as an employee of Defendant and in furtherance of his employer's interest.

37. Downs committed battery upon Plaintiff when he, intentionally and with reckless disregard for Plaintiff's safety and the safety of others, shoved her as her back was turned and she was attempting to comply with his demand that she leave the premises.

38. The battery caused Plaintiff both physical pain and emotional suffering.

## CONCLUSION

WHEREFORE, Plaintiff ASSIA BOUNDAOUI respectfully requests that this Honorable Court enter judgment in her favor and against Defendant CONSTELLATION BRANDS, INC., awarding:

a. Actual damages;

b. Compensatory damages;

c. Punitive damages;

d.  Costs;

e.  Attorney fees; and

f.  Such other relief as the Court deems just and equitable.


Respectfully submitted,
ASSIA BOUNDAOUI
Plaintiff


_____/s/Christina Abraham_____
Christina Abraham
Attorney for Plaintiff


Attorney No. 6298946
Abraham Law and Consulting
161 N. Clark Street, Suite 1600
312-588-7150
Christina.w.abraham@gmail.com